[No. 449-1. Division Three. October 12, 1971.]

ED SIMMONS, *Respondent*, v. STANLEY K. KOETEEUW *et al.*, *Defendants*, SEARS, ROEBUCK & CO., INC., *Appellant*.

*Lee, Carney, Smart & Bever, R. Jack Stephenson* and *Milton C. Smith* (*Louis A. Lehr, Jr.* and *Eugene J. Kelley, Jr.*, of counsel), for appellant.

*Barokas, Martin, Richey & Schaefer, Dale Martin, Burns & Schneiderman* and *James D. Burns*, for respondent.

GREEN, J.—Plaintiff, Edward Simmons, age 16, was injured while operating a rotary lawn mower owned by his neighbors, defendants Stanley and Delores Koeteeuw. This action for damages was brought against them and Sears, Roebuck & Co., Inc., the manufacturer-seller of the mower. Judgment was entered on a verdict for all defendants. Thereafter, plaintiff filed a motion for new trial. It was granted. Sears appeals.

On July 18, 1968, Mrs. Koeteeuw hired Edward Simmons to mow her lawn. She furnished him with a rotary lawn mower purchased from Sears on March 29, 1968. She instructed him in the use of the mower. The throttle lever registered positions of "off", "idle" and "run." Mrs. Koeteeuw testified the mower was started, the throttle lever was placed on "idle" and in that position Simmons commenced mowing the lawn. She testified she did not observe him move the lever. The evidence is in conflict on this point, Simmons claiming he moved the lever from "idle" to "run" when he began mowing. While the mower was equipped with a clutch so that it could be self-propelled, Simmons chose not to use it and cut the grass by pushing the mower. In a short time grass began falling from between the discharge chute and the grass catcher. Simmons claims he moved the throttle to "idle", took off the bag and made three sweeps into the chute with his hand to remove

the grass. On the third sweep, the rotating blade struck his hand causing injury.

Immediately over the red discharge chute was a decal containing the word "caution." On the metal housing at the back of the mower was a raised metal warning reading, "Keep hands and feet from under the mower."

Conflicting testimony was presented by expert witnesses for both plaintiff and defendants, with respect to the question of whether the mower was a safe instrumentality when properly used and whether the mower contained adequate warnings. Likewise, the evidence was in conflict as to whether Simmons had prior experience with rotary lawn mowers. It is undisputed he was familiar with the Sears reel-type lawn mower and when the throttle is placed in the "idle" position on this lawn mower, the reel is disengaged. He testified he thought it was the same on the instant mower, although the evidence on this point is conflicting.

█ █ The trial judge granted a new trial because he believed he committed error in failing to give plaintiff's proposed instruction on strict liability. This proposed instruction reads as follows:

> If you find that the rotary power mower from which Edward Simmons received his injury was an unreasonably dangerous product to those who used it, you are instructed to return a verdict in favor of the plaintiff against defendant, Sears, Roebuck & Company. A product may be unreasonably dangerous even though the seller has exercised all possible care in his manufacture and sale, but to be unreasonably dangerous it must be dangerous to an extent which would be beyond the ordinary knowledge of a user of Edward Simmons' age and experience.

Sears contends the proposed instruction does not meet the requirements of strict liability delineated in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). In *Ulmer*, decided about 9 months prior to the instant trial, the court adopted strict liability as defined in Restatement (Second) of Torts § 402A (1965) as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In so doing, the Supreme Court directed the trial court on new trial to instruct according to this Restatement rule, summarized in *Ulmer* at page 535 (Neill, J. concurring):

[T]he plaintiff has the burden of proving (1) that there was a defect, (2) which existed at the time the product left the hands of the manufacturer, (3) which was not contemplated by the user, (4) which renders the product unreasonably dangerous, and (5) that such defect was the proximate cause of plaintiff's injury.

It seems evident that plaintiff's proposed instruction in the instant case fails to include elements (1), (2) and (5) summarized in *Ulmer* and, further, does not instruct that the burden of proof as to each of those elements is upon plaintiff. Consequently, the trial court did not err by refusing to give plaintiff's proposed instruction, but did err when it later reconsidered and granted a new trial in the belief its initial refusal was erroneous. Plaintiff had the responsibility of proposing a proper instruction; the refusal to give an incorrect instruction is not error. *State v. Collins,* 72 Wn.2d 741, 435 P.2d 538 (1967).

Plaintiff contends that *Ulmer* granted a new trial on strict liability in a situation where the proposed instruc-

tion in the first trial was erroneously drawn. It seems clear the court in *Ulmer* did not thereby intend to abrogate the rule stated in *State v. Collins, supra. Ulmer* was the first case in this state adopting as to manufacturers the rule of strict liability and defining the elements thereof; consequently, the court in that situation believed the plaintiff should have the opportunity on new trial to frame a new instruction containing the rules laid down by *Ulmer*. That is not true in the instant case.

■ The trial court also granted the new trial upon the ground substantial justice was not done. No definite reasons of law and fact were set forth in the order as required by CR 59(f). Neither were satisfactory reasons set forth in his oral comments, to wit:

> MR. STEPHENSON: Yes. As to the second reason, failure of substantial justice, may I inquire what the court has in mind in regard to that?
>
> THE COURT: I have in mind the fact that a sixteen-year-old boy received definite permanent injuries to his left hand, amputation of the fourth digit and substantial damage to the balance of the hand and it is just what is being right with reference to the entire matter.
>
> I feel very strongly, here is a minor. Minors over the long period of the law have been entitled to some special considerations and I feel that as to this sixteen-year-old that this is the case.

This constituted only a disagreement with the outcome of the trial and does not meet the requirements of CR 59(f). *Knecht v. Marzano*, 65 Wn.2d 290, 297, 396 P.2d 782 (1964).

Judgment reversed.

MUNSON, C.J., and EVANS, J., concur.