[No. 37806.   Department One.   June 16, 1966.]

ROBERT H. BUNNELL et al., Respondents, v. IRWIN W. BARR et al., Appellants.[*]

*Davies, Pearson, Anderson & Pearson,* by *Wayne J. Davies,* for appellants.

*Lycette, Diamond & Sylvester* and *Richard M. Foreman,* for respondents.

[*]Reported in 415 P.2d 640.

HAMILTON, J.—This action for personal injury and property damages arises from a head-on collision occurring at about 9:30 p. m., March 31, 1962, on Petrovitsky Road southeast of Renton, Washington. Plaintiffs' (respondents') automobile, a Nash Rambler station wagon, was being driven by plaintiff Mrs. Betty Bunnell, who was accompanied by her two minor daughters, Trudy and Karen Bunnell. Defendants' (appellants') vehicle, a Chevrolet pick-up truck, was being driven by defendant Irwin W. Barr with the permission of his parents, defendants Mr. and Mrs. Alfred J. Barr. Irwin W. Barr was accompanied by two young girls.

The jury returned a verdict for defendants, rejecting the claims of all plaintiffs. The trial court granted plaintiffs' motion for new trial, from which order defendants appeal.

Petrovitsky Road, at the time and in the vicinity of the accident, was a narrow, two-lane, blacktop roadway, winding generally in an east-west direction through a heavily wooded area. At the scene of the accident, the road was straight for several hundred feet, with narrow shoulders abutted on the south side by a high, brushy bank and on the north side by trees and a drop off. Traffic approaching from the east or west entered the straight stretch of road from gradual left-hand curves. The posted speed limit was 45 miles an hour. At the time of the accident, it was dark and the roadway was dry. Plaintiffs' vehicle was eastbound and defendants' vehicle was westbound. When they emerged from their respective curves and met on the straight stretch of road a collision occurred. Each driver contends the other was on the wrong side of the road, and from this contradiction flows the issues raised on this appeal.

The plaintiff driver testified, in substance, that as she entered the straight stretch of roadway she was traveling approximately 30 miles an hour; that she observed the headlights of defendants' vehicle emerging from its curve about 300 to 350 feet away; that defendants' vehicle then appeared to be partly on her side of the road and approaching quite rapidly; that as defendants' vehicle continued to move further onto her side of the road she applied her brakes and pulled over to her right (the south side of the road) and

onto the shoulder as far as the narrowness of the shoulder and the abutting high bank permitted; that as she came to a stop in this position the left front portion of defendants' vehicle collided violently with the left front portion of her vehicle; and that her vehicle did not noticeably move after impact. Her version of the event was supported by the testimony of the driver of a following car, the testimony of a highway patrolman as to the location of debris and wheel marks which he observed, photographs showing the location and damage to plaintiffs' vehicle, and to some extent by an extrajudicial admission of the driver of defendants' vehicle.

On the other hand, the defendant driver essentially testified that as he came out of the curve he was traveling about 35 to 45 miles an hour with the left wheels of his vehicle approximately a foot over the center line; that he observed the reflection of the headlights of plaintiffs' vehicle approaching and, as the headlights came into full view, he observed that one third to one half of plaintiffs' vehicle was on his side of the road; that he immediately returned to his proper lane of travel and slowed down; that as plaintiffs' vehicle continued toward him on his side of the road he realized a collision was imminent; that he forcibly applied his brakes and attempted at the last minute to avoid the accident by swerving to his left rather than into the trees and drop off on his right (the north side of the road); that the vehicles collided in about the center of the road with the right front of his vehicle striking the left front of plaintiffs' vehicle; and that, following impact, his vehicle swung completely around and ended up heading west on the north side of the road.

Defendant driver's depiction of the occurrence finds support in the testimony of one of his passengers, testimony concerning some dirt in and about the center of the roadway, and evidence relating to tire or skid marks from his vehicle commencing on his side of the road and leading into the area of impact. Photographs of damage to defendants' truck are inconclusive as to the point of initial contact with plaintiffs' vehicle.

The jury was appropriately instructed upon the rules of the road and the issues of negligence and contributory negligence as related to the respective drivers and plaintiff driver's passengers. It then returned a verdict for defendants, thus rejecting the claims of all plaintiffs. It is therefore apparent from the verdict that the jury accepted the defendant driver's version of the accident and found him free of negligence.

In the order granting a new trial, the trial court, pursuant to Rule of Pleading, Practice and Procedure 59.04W, RCW vol. 0, set forth the following reasons for its action:

The defendant driver gave several different versions of how the accident happened, each version being inconsistent with the other, and in addition, the physical facts, mainly the position of the plaintiffs' vehicle on the side of the road, the evidence of some eighteen inches of tiremarks or wheel marks indicating the plaintiffs' car had been pushed back by the force of the collision; the evidence of the skidmarks on the highway from the defendant driver's automobile indicated that the accident had to have occurred on the plaintiffs' side of the road and not in the center of the road as the defendant claimed and testified; and in view of this and the other evidence as to the manner in which the collision occurred, the court being concerned mainly with the uncontroverted physical evidence, the court committed error in instructing the jury by its emergency instruction, the Court's Instruction No. 12, and this instruction should not have been given under the facts and circumstances of this case.

In addition, substantial justice has not been done in this case for the above reasons and for the additional reason that the testimony also indicates that defendants' automobile was not equipped with brakes which would safely stop the automobile without grabbing and thus throwing the automobile out of control as the defendant testified on one version of how the accident occurred, and the court further feels that the defendant driver was negligent and that the verdict was against the evidence in this case, but the court is not directing a verdict against the defendant driver but is simply awarding a new trial, . . . .

The trial court thus confined its reasons to matters to be found within the record and evaluated the consistency of

the defendant driver's testimony and the physical facts in reaching its conclusions that (a) the emergency instruction should not have been given and (b) substantial justice had not been done.

It is axiomatic that we, as is the trial court, are bound to the rule that in considering the issues raised by a motion for new trial the evidence of the nonmoving party must be accepted as true and, together with all reasonable inferences that may be drawn therefrom, be interpreted in a light most favorable to that party. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963). Likewise, we are cognizant of the principle that, except where questions of law are involved, the trial court is invested with broad discretion in granting or denying motions for new trial, and that the trial court's determination will not be disturbed on appeal absent an abuse of discretion. *Cyrus v. Martin*, 64 Wn.2d 810, 394 P.2d 369 (1964); *Sargent v. Safeway Stores, Inc.*, 67 Wn.2d 941, 410 P.2d 918 (1966). This latter principle, however, does not constitute a license for the trial court to weigh the evidence and substitute its judgment for that of the jury, simply because the trial court disagrees with the verdict. *Knecht v. Marzano*, 65 Wn.2d 290, 396 P.2d 782 (1964).

The basic underpinning of the trial court's action in granting a new trial in the instant case is found in the principle, announced in *Mouso v. Bellingham & No. Ry.*, 106 Wash. 299, 303, 179 Pac. 848 (1919), to the effect that:

> [W]here the physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts,
> . . . . .

This rule, however, does not apply when the physical facts in evidence go no further than to simply cast doubt upon the credibility of a witness or a party. *Shephard v. Smith*, 198 Wash. 395, 88 P.2d 601 (1939). On the contrary, to properly apply the rule, the physical facts in evidence must not only be undisputed, they must also be consistent with each other and, when taken together, be manifestly irreconcilable with the countervailing oral testimony. In

short, the established and undisputed physical facts must be such as to irresistably lead reasonable minds to but a single conclusion.

This is not the situation in the instant case. The position of plaintiffs' vehicle after the accident, the damage thereto, the short skid marks, and the debris observed by the state patrolman all tend, it is true, to support plaintiffs' version of the collision. By the same token, however, the tire or skid marks from defendants' vehicle, commencing as they do in the proper lane of travel and arcing twice for but short distances across the center line, offer a degree of plausibility to defendants' version of the accident. The physical facts thus do not lead to but a single conclusion. Being subject to more than one interpretation, they do not establish the incredibility of defendants' version as a matter of law. Evaluation of the physical facts was properly a matter for the jury.

The same is true with respect to the inconsistencies attributed by the trial court to defendant driver's testimony. The inconsistency adverted to by the trial court arises principally from a difference between a written statement given by the defendant driver immediately after the accident and his testimony in court. In the written statement, the defendant driver indicated his brakes may have grabbed, thus throwing him out of control and into plaintiffs' lane of travel. In his oral testimony, he denied the grabbing of his brakes and stated that if the brakes locked when he applied them they did not cause a loss of control. There was no evidence that the truck's brakes had been or were defective, and the reliability of the written statement was impeached by evidence concerning the conditions under which it was taken. Under these circumstances, the credibility of the defendant driver's testimony was clearly a jury question.

Affording defendants' evidence, then, the favorable interpretation required, we find no error in the form of the emergency instruction or in the submission of it. *Ruff v. Fruit Delivery Co.*, 22 Wn.2d 708, 157 P.2d 730 (1945). Defendants had the right to have their theory of the case presented to the jury. *DeKoning v. Williams*, 47 Wn.2d

139, 286 P.2d 694 (1955). The trial court erred in granting a new trial upon the ground that the giving of the emergency instruction was improper.

We reach the same result in connection with the second ground advanced in support of the order, that is, a failure of substantial justice. When reduced to the bare bones, the trial court's order and the reasons given therefore reflect no more than a disagreement between the trial court and the jury as to the credibility and interpretation of evidence bearing on the issue of negligence. Such a disagreement is not an adequate reason for granting a new trial when the verdict of the jury is otherwise supported by substantial evidence. *Knecht v. Marzano, supra.* In *Rettinger v. Bresnahan,* 42 Wn.2d 631, 633, 257 P.2d 633 (1953) we stated:

> It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts. It is the province of the jury to believe, or disbelieve, any witness whose testimony it is called upon to consider. If there is substantial evidence (as distinguished from a scintilla) on both sides of an issue, what the trial court believes after hearing the testimony, and what this court believes after reading the record, is immaterial. The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final.

The order granting a new trial is accordingly reversed, and the cause is remanded for entry of judgment upon the verdict.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.