# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 SEP 25 AM 10:43
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

|  |  |
|---|---|
| BRIAN HOLLINS, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>RICHARD ZBARASCHUK and JANE )<br>DOE ZBARASCHUK, individually and )<br>their marital community; and ALEXIA )<br>ZBARASCHUK and JOHN DOE )<br>ZBARASCHUK, individually and their )<br>marital community, )<br>)<br>Respondents. )<br>) | No. 75532-3-I<br><br>DIVISION ONE<br><br>PUBLISHED<br><br>FILED: September 25, 2017 |

Cox, J. — We review for abuse of discretion a trial court's grant of a new trial "'unless that grant is based on an error of law.'"[1] We also review for abuse of discretion a trial court's evidentiary rulings.[2] A much stronger showing of abuse of discretion is required to set aside an order granting a new trial than one denying a new trial.[3]

---

[1] Clark v. Teng, 195 Wn. App. 482, 491, 380 P.3d 73 (2016) (quoting Teter v. Deck, 174 Wn.2d 207, 215, 274 P.3d 336 (2012)), review denied, 187 Wn.2d 1016 (2017); see also Hoskins v. Reich, 142 Wn. App. 557, 566, 174 P.3d 1250 (2008).

[2] Hoskins, 142 Wn. App. at 566.

[3] Clark, 195 Wn. App. at 492.

Here, the trial judge granted the defendants' motion for a new trial following a substantial jury verdict for the plaintiff. She did so based on her exclusion of evidence at trial regarding damages, which she concluded was both an abuse of discretion and deprived the defendants of a fair trial. Plaintiff fails in his burden to show that the trial judge abused her discretion by granting a new trial. We affirm.

On September 23, 2011, Alexia Zbaraschuk crashed her father's car into the rear of Brian Hollins' car. He had stopped on a freeway at the time of the collision. He was seriously injured.

Hollins commenced this personal injury action against Alexia and her father ("the Zbaraschuks"). They admitted liability from the accident to the extent of causation. And they did not dispute Hollins' damages to the extent of $33,124.18 in medical costs for his injuries.[4]

The issue for the jury trial that followed was the total amount of Hollins' additional past and future earnings damages and past and future non-economic, damages.[5]

Pretrial, Hollins successfully moved in limine to exclude evidence of what he characterized as his "unrelated accidents, incidents, and medical conditions."[6]

---

[4] Clerk's Papers at 437.

[5] Id.

[6] Id. at 80-89.

2

He argued, among other things, that this evidence was not relevant to his claim in this action.[7] The motion judge granted the motion.[8]

The parties tried the case to a jury before a different judge than the motion judge. During trial, the Zbaraschuks requested that the trial judge reconsider the motion judge's order in limine. They did so during Hollins' testimony as well as at other times during trial. In each instance, the trial judge denied their requests for relief from the order in limine.

The jury returned a verdict in favor of Hollins of over two million dollars in damages. The Zbaraschuks moved for a new trial under several subsections of CR 59(a). They argued that the trial judge abused her discretion by excluding evidence of damages concerning Hollins' pre-accident and post-accident injuries. The trial judge granted the motion solely on the basis of CR 59(a)(1). She denied the motion to the extent of the other subsections of CR 59(a).

Hollins appeals.

## NEW TRIAL

Hollins argues that we should review de novo the trial judge's decision to grant a new trial and that the decision was erroneous.[9] We disagree with both arguments.

---

[7] Id. at 81-89.

[8] Id. at 165-166.

[9] Appellant's Opening Brief at 16-20.

3

*Standard of Review*

A trial judge may grant a new trial under CR 59(a). Because the trial judge in this case based her ruling solely on the first subsection of this rule, we focus on this subsection. It provides:

> On the motion of the party aggrieved, a verdict may be vacated and a new trial granted . . . . Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
>
> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or **abuse of discretion, by which such party was prevented from having a fair trial** . . . .[10]

We review for abuse of discretion a trial court's grant of a new trial "'unless that grant is based on an error of law.'"[11] We also review for abuse of discretion a trial court's evidentiary rulings.[12] A much stronger showing of abuse of discretion is required to set aside an order granting a new trial than one denying a new trial.[13] A court abuses its discretion when it makes a decision for untenable reasons or on untenable grounds.[14]

Hollins argues that we have no basis to defer to the trial judge's ruling. This argument essentially urges us to review de novo the trial judge's decision to

---

[10] CR 59(a) (emphasis added).

[11] Clark, 195 Wn. App. at 491 (quoting Teter, 174 Wn.2d at 215).

[12] Hoskins, 142 Wn. App. at 566.

[13] Clark, 195 Wn. App. at 492

[14] Wade's Eastside Gun Shop, Inc. v. Dep't of Labor and Indus., 185 Wn.2d 270, 277, 372 P.3d 97 (2016).

grant a new trial. Because that is not the law, we decline to do so. Rather, we apply the abuse of discretion standard of review that controls in this case.

Notably, Hollins does not directly argue that the trial judge abused her discretion by making her decision either for untenable reasons or on untenable grounds. Instead, he argues that the motion judge—a different judge from this trial judge—properly granted relief in limine excluding evidence prior to trial. This is unpersuasive.

The proper focus of our review is the trial judge's decision, not the motion judge's. The primary reason for this is that the trial judge, who had the benefit of a fully developed trial record, was best informed on the relevant question: whether a new trial should be granted. To the contrary, the motion judge, who had a much more limited record than that developed at trial, was far less informed. Moreover, the question whether a new trial was warranted was simply not before the motion judge when he ruled in limine before trial. Hollins fails to present any persuasive authority to counter these basic points.

The other point that we consider in deciding the proper standard of review to apply is the nature of the decision underlying this motion for a new trial. Here, the underlying decision before the trial judge was whether she had erroneously excluded damages evidence at trial. As the authorities uniformly hold, this is a classic discretionary decision.[15]

Finally, this court also "require[s] a 'much stronger showing of abuse of discretion to set aside an order granting a new trial than one denying a new

---

[15] See Hoskins, 142 Wn. App. at 566.

5

trial.'"[16] There is nothing either in Hollins' arguments or the record before us that persuasively supports that he has made this stronger showing in this case.

Hollins relies on several cases to argue that we should not apply the abuse of discretion standard of review to this case. Reliance on these cases is misplaced.

The first case is McCoy v. Kent Nursery, Inc.[17] On review, the issue was whether the trial court had abused its discretion by granting a new trial based on CR 59(a)(9).[18] That rarely used subsection of the rule involves the question whether a "lack of substantial justice" applies.[19] Division Two of this court concluded that the trial court had abused its discretion under the factual circumstances of that case.[20]

Here, the trial judge granted a new trial based on CR 59(a)(1), not CR 59(a)(9). Review of the jury verdict was not the issue here. Thus, the two cases are distinguishable.

Bunnell v. Barr,[21] on which Hollins also relies, is equally unconvincing. That case reaffirms the constitutional role of the jury.[22] But the court there did

---

[16] Clark, 195 Wn. App. at 492 (quoting Teter, 174 Wn.2d at 222).

[17] 163 Wn. App. 744, 260 P.3d 967 (2011).

[18] Id. at 768-69.

[19] Id. at 769.

[20] Id. at 768-71.

[21] 68 Wn.2d 771, 415 P.2d 640 (1966).

[22] See id. at 774-77.

not consider whether that role overrides admission of all relevant evidence to permit a jury to fulfill its constitutional function. This latter question is at issue in this case. So reliance on this case is also misplaced.

<u>Thompson v. Grays Harbor Community Hospital</u>[23] is the last case on which Hollins relies. It is not helpful. While noting that a trial court's discretion "is not without limits," it does nothing to address what those limits are under the circumstances of this case.[24] Because we conclude that this trial judge was well within her discretion to grant a new trial, <u>Thompson</u> does not control.

Accordingly, we apply the abuse of discretion standard to our review of this trial judge's decision to grant a new trial.

*Exclusion of Evidence*

Hollins relies heavily on the motion judge's ruling in limine that excluded certain evidence. We stated earlier in this opinion why that ruling is not the proper focus of our review. But we also conclude that Hollins' reliance on that ruling is misplaced for other reasons.

First, as we read Hollins' motion in limine, it focuses on evidence of causation, one of the necessary elements he must prove in this personal injury action. For example, he stated in his motion that his "claim in this lawsuit does not include left knee, left elbow, low back or hip problems."[25] Similarly, he stated

---

[23] 36 Wn. App. 300, 675 P.2d 239 (1983).

[24] <u>Id.</u> at 307.

[25] Clerk's Papers at 81.

that his "claim in this lawsuit does not include a right wrist problem."[26] And he further stated that his April 2011 neck spasm was not symptomatic at the time of the September 2011 accident underlying this action.[27] Thus, he argues that evidence of these injuries and their treatment was not relevant, and not facts of consequence, to any issue in this case. He also argued that admission of such evidence would violate ER 403 by confusing the jury.

Based on this motion and the response to it, the motion judge entered a broadly worded order. It excluded:

> any and all evidence, references to evidence, testimony, or argument relating to a left knee injury on January 20, 2005 and any and all surgery thereto; pre-existing degenerative discogenic disease; injury to his neck in 2009; an injury to left elbow in January 2013 and subsequent surgery in September 2013; low back injury in January 2013; right hip injury in January 2013 and subsequent hip replacement in June 2015; injury to his right wrist in September or October 2015 . . . .[28]

Whether the motion judge intended to exclude evidence related to damages for these matters is unclear. Hollins' motion does not expressly mention damages evidence. Neither does the order in limine. The absence of such reference is significant, given that there is no dispute that the nature and amount of damages (other than the $33,124.18 for medical care) were the primary issues reserved for trial.

---

[26] Id.

[27] Id.

[28] Id. at 166.

Alternatively, we assume, for purposes of analysis only, that the motion judge intended to exclude the matters identified in his order for purposes of damages as well. The question then is whether the trial judge's exclusion of that evidence at trial was an abuse of discretion.

Under the "open door" rule, "when one party opens the door to a topic, the other party may also introduce evidence in order to establish the truth for the jury."[29] As explained by the supreme court:

> It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it. Rules of evidence are designed to aid in establishing the truth. To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths.[30]

Here, during Hollins' direct examination at trial, he testified that he has a permanent disability and that he had been in treatment "for the last five years."[31] This testimony referenced the time period from his September 2011 accident to the time of trial in 2016. He did not limit his treatment testimony to his neck injury from this accident, the main focus of his claim in this case.

The Zbaraschuks then requested that the trial judge revisit the order in limine excluding evidence of Hollins' other injuries. They argued that he opened the door to evidence of his damages—for pain and suffering and other aspects

---

[29] Taylor v. Intuitive Surgical, Inc., 187 Wn.2d 743, 766, 389 P.3d 517 (2017).

[30] State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[31] Report of Proceedings Vol. 2 (June 2, 2016) at 236-37, 244.

related to these other injuries—by testifying about his permanent disability and continued treatment up to the time of trial.

The trial judge denied this request. But she allowed the Zbaraschuks to question Hollins and his medical providers about the nature of the therapy he received. The judge explained that the Zbaraschuks should have an opportunity to clarify whether Hollins' continued treatment related to the injuries he sustained from the accident.

After further direct and cross-examination of Hollins, the Zbaraschuks unsuccessfully renewed their motion to further inquire into Hollins' other injuries.

We note that there was further extended colloquy about damages between counsel and the trial judge during the court's consideration of the proposed jury instructions.[32] The Zbaraschuks sought a curative instruction based on the trial judge's adherence to the ruling in limine excluding evidence. They sought such an instruction to limit prejudice to them from Hollins' testimony that he continued treatment up to the time of trial without also permitting evidence that he had other medical conditions that also required treatment. They argued they were prejudiced because the jury did not "have [a] complete picture" of relevant damages evidence.[33]

After hearing the arguments of both counsel, the trial judge stated:

> I understand the argument, and I've read the jury instructions
> several times. I've got to tell you, I was very -- it was a really close
> call to not allow evidence regarding these other injuries to the

---

[32] Report of Proceedings Vol. 3 (June 6, 2016) at 440-49.

[33] Id. at 445.

extent they impact [the] claim for damages. I mean, there is a very valid argument for that.[34]

Nevertheless, despite characterizing the question as "close," the trial judge did not change her prior rulings to exclude evidence that the motion judge excluded in his pretrial ruling. She also denied the Zbaraschuks' request for a curative instruction.

The jury ultimately returned a verdict exceeding two million dollars in Hollins' favor. This included over $969,000 in past and future earnings damages and over $1,000,000 in past and future non-economic damages.

The Zbaraschuks moved for a new trial under several subsections of CR 59(a), arguing that the trial judge abused her discretion by excluding evidence of Hollins' other bodily injuries. They argued that the "jury was deceived" because it was unable to consider these other factors that affected Hollins, which it should have considered in its damages award.

The trial judge granted the Zbaraschuks' motion for a new trial. She concluded that she had abused her discretion by excluding the damages evidence "for the purpose of establishing credibility and defending against [Hollins'] claimed damages."[35] The judge stated in her written order that:

> [the motion judge] ruled in limine that [Hollins'] unrelated medical conditions were not relevant as to causation of his injuries, but they became relevant during the course of trial and [Hollins] opened the door to evidence of this nature by claiming future wage loss and non-economic damages attributable to the injury he sustained in the motor vehicle accident. By prohibiting [the Zbaraschuks] from eliciting evidence that challenged [Hollins'] credibility . . . or

---

[34] Id. at 449.

[35] Clerk's Papers at 621.

11

damages proximately caused by the motor vehicle accident[,] [the Zbaraschuks] were denied a fair trial. The jury had no evidence by which to weigh the long-term effect of [Hollins'] injuries admittedly sustained in the motor vehicle accident in context with other events also bearing on [his] claimed damages.[36]

The trial judge was correct. The Zbaraschuks admitted liability to the extent of causation of Hollins' neck injury. Likewise, they did not dispute the medical costs he incurred to the extent of $33,124.18. Thus, the question for the jury at trial was what amount of money would "reasonably and fairly compensate [Hollins] for those damages . . . proximately caused by the [Zbaraschuks'] negligence."[37]

Hollins testified at trial that he had a permanent disability and had been in treatment "for the last five years."[38] But the jury did not hear that he was also treated for other injuries before and after the accident. For example, Hollins tore a ligament in his left knee five to six years prior to the accident. He also injured his back, hip, and an elbow after slipping in 2013 and had a hip replaced in 2015. Importantly, the record shows that Hollins continued to treat these injuries after the September 23, 2011 accident and that he has physical limitations due to these injuries.

Hollins' testimony created an inference that his disability, continued treatment, and inability to maintain his previous employment resulted solely from his neck injury from the accident. The Zbaraschuks sought to challenge Hollins'

---

[36] Id. at 622.

[37] Id. at 432.

[38] Report of Proceedings Vol. 2 (June 2, 2016) at 236-37, 244.

credibility and rebut this inference with evidence of his other bodily injuries. They were precluded from doing so during trial.

Hollins argues that he did not open the door to evidence of his other injuries. And even if he did, he argues that the Zbaraschuks sought to present "speculative and unduly prejudicial" evidence to rebut the testimony. Not so.

Our prior discussion in this opinion explains how Hollins opened the door to this evidence by his testimony that he continued treatment "for the last five years."[39] This shows that he opened the door to damages evidence showing other reasons for his treatment.

He also testified at trial and during a discovery deposition about his injuries and treatment. This evidence is neither speculative nor unduly prejudicial.

Additionally, Hollins argues that the motion judge did not abuse his discretion by excluding these injuries because the Zbaraschuks failed to produce the evidence required to admit these other injuries. But whether the motion judge abused his discretion is not the proper focus of our inquiry. Whether the trial judge did so is our focus.

In any event, the cases on which he relies to support this argument do not control. For example, he relies on Allen v. Mattoon[40] for the proposition that "admission of [evidence of] the second collision [in that case] was improper" because there was no medical evidence that the plaintiff's injuries were caused

---

[39] Id.

[40] 8 Wn. App. 220, 504 P.2d 316 (1972).

13

by the collision.[41] From this, he asserts that medical evidence is necessary for the admission of damages evidence.

We do not read Allen for the proposition that medical evidence is always required for admission of damages evidence. In that case, Division Three of this court criticized the trial court's admission of evidence as "only a fragmentary and nonspecific reference in the testimony of" a medical expert.[42] This hardly supports a bar to admission of all evidence that is relevant to the issue of damages.

Colley v. Peacehealth[43] is instructive on this point. In that medical malpractice action, we noted that defense experts may offer competing causation theories without speaking in terms of medical probability.[44] Applying that principle to this case, there simply was no basis to exclude defense damages evidence because of the alleged lack of medical support.

The other cases on which Hollins relies involved prior injuries or conditions and whether a later accident *proximately caused* the plaintiff's claimed injuries.[45] For example, in Washington Irrigation & Development Co. v. Sherman,

---

[41] Id. at 229-30.

[42] Id. at 229.

[43] 177 Wn. App. 717, 312 P.3d 989 (2013).

[44] See id. at 729-30.

[45] See Harris v. Drake, 152 Wn.2d 480, 494, 99 P.3d 872 (2004); Hoskins, 142 Wn. App. at 568-70; see also Berger v. Sonneland, 144 Wn.2d 91, 110-11, 26 P.3d 257 (2001); Hayden v. Boeing Co., No. 73344-1-I, slip op. at 4-8 (Wash. Ct. App. April 25, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/733443.pdf., review denied sub nom., 186 Wn.2d 1012 (2016); Wash. Irrig. & Dev. Co. v. Sherman, 106 Wn.2d 685, 691-92, 724 P.2d 997 (1986); Mattoon, 8 Wn. App. at 229-30.

Elbridge Sherman suffered an industrial back injury while working.[46] At trial, his employer questioned the parties' medical experts about two car accidents that Sherman was involved in after his industrial injury.[47] It specifically asked whether the accidents affected Sherman's preexisting back condition.[48]

In Harris v. Drake, Bradley Harris, a painter, sustained a certain shoulder injury from a car accident.[49] After recovering from the accident, Harris resumed his painting job, but his shoulder problem reappeared.[50] At trial, the parties disputed the causation of his injury, and Harris' surgeon testified that painters often have the same shoulder injury due to their profession.[51]

Lastly, in Hoskins v. Reich, Michael Hoskins sustained neck, back, and arm injuries from a car accident.[52] At trial, the parties disputed the causation of his injuries, and the trial court admitted evidence of certain treatment he received before the accident.[53]

But the Zbaraschuks admitted to proximately causing Hollins' neck injury in this case. Thus, only damages was at issue. The Zbaraschuks sought to

---

[46] 106 Wn.2d 685, 686, 724 P.2d 997 (1986).

[47] Id. at 691.

[48] Id.

[49] 152 Wn.2d 480, 484, 493, 99 P.3d 872 (2004).

[50] Id. at 493.

[51] Id. at 493-94.

[52] 142 Wn. App. 557, 560, 174 P.3d 1250 (2008).

[53] Id. at 560-70.

admit evidence of Hollins' other bodily injuries to challenge his credibility and ensure that the jury had the complete picture as to damages. They did not argue that Hollins' other injuries proximately caused his neck injury. Thus, Hollins' reliance on these cases is misplaced.

Lastly, Hollins argues that the trial judge improperly substituted her judgment for that of the jury because she disagreed with the verdict. This argument is contrary to the record.

In granting the new trial, the trial judge stated during her oral remarks:

> I'm not saying that their decision was in error or they considered things incorrectly or anything of that nature. I'm obviously not in a position to say that.[54]

The judge's written order that follows incorporates this and her other oral remarks in granting the new trial.

Moreover, the order denies the new trial motion to the extent of subsections other than CR 59(a)(1). Among these other subsections is CR 59(a)(7), dealing with "evidence to justify the [jury] verdict." Thus, the trial judge expressly denied the motion to the extent it challenged the jury verdict.

To say that the trial judge substituted her judgment for that of the jury is unwarranted on this record.

### Prevention of Fair Trial

Hollins argues that even if the trial judge abused her discretion, that abuse did not prevent the Zbaraschuks from having a fair trial. We again disagree.

---

[54] Report of Proceedings (July 6, 2016) at 35.

Once the trial judge determines there was an abuse of discretion, the related question is whether the abuse prevented the moving party from having a fair trial.[55] This record supports this trial judge's decision that the trial was not fair to the Zbaraschuks.

Here, the trial judge determined that "[t]he jury had no evidence by which to weigh the long-term effect of [Hollins'] injuries admittedly sustained in the motor vehicle accident in context with other events also bearing on [Hollins'] claimed damages."[56] Hollins fails to satisfactorily explain how a trial could be fair under these circumstances.

Even though Hollins has physical limitations due to his other injuries, the evidence presented to the jury created an inference that his disability, continued treatment, and inability to maintain his employment resulted solely from his neck injury. Because the trial court prohibited the Zbaraschuks from challenging Hollins' credibility and rebutting this inference, the jury could not consider whether his other injuries affected the amount of his claimed damages. This was unfair to the Zbaraschuks.

Hollins argues that the Zbaraschuks received a fair trial for the following four reasons. None is persuasive.

First, Hollins contends that in closing argument, the Zbaraschuks argued that the jury should reduce the damages award based on his other injuries. But lawyers' arguments are not evidence. And without the damages evidence

---

[55] CR 59(a).

[56] Clerk's Papers at 622.

17

excluded by the trial judge, the jury was left with a void it could not fill other than with speculation.

Second, Hollins argues that the alleged prejudice resulting from the exclusion of this evidence was cured by the trial court's instruction. Not so.

The court instructed the jury to disregard testimony regarding treatment Hollins received after 2012. But this instruction specifically concerned the *cost* of medical treatment that Hollins received, which was not an issue at trial. It provided:

> You are instructed that the value of reasonable and necessary past medical care caused by the collision is $33,124.18. . . . Plaintiff has no claim for the cost of medical care received after December 2012 or beyond. You should disregard testimony, if any, that describes or relates to medical treatment Plaintiff received or may seek after December 2012, other than self-help care.[57]

This limiting instruction did nothing to address other damages, which included past and future economic and non-economic damages. Thus, it did not cure prejudice, as argued.

Third, Hollins argues that the jury is presumed to have followed the court's instruction to "determine the amount of money that will reasonably and fairly compensate Plaintiff for those damages you find were proximately caused by the Defendants' negligence."[58] This is true. But, absent the evidence the trial judge excluded during trial, this presumption is irrelevant. The jury lacked all relevant evidence to make a proper determination of damages.

---

[57] Clerk's Papers at 426.

[58] Id. at 432.

18

Fourth, Hollins argues that the evidence supported the verdict and that the verdict was not excessive. But whether the verdict was excessive or supported by evidence is not the issue. The issue is whether the trial court abused its discretion in excluding damages evidence and whether that abuse prevented the Zbaraschuks from having a fair trial.

In sum, the trial court did not abuse its discretion by granting a new trial.

Lastly, Hollins requests post judgment interest. Because we affirm the trial judge's grant of a new trial, this question is moot.

We affirm the order granting the Zbaraschuks' motion for a new trial.

_____Cox, J._____

WE CONCUR:

_____        _____Becker, J._____

**Hollins v. Zbaraschuk, No. 75532-3-I**

DWYER, J. (dissenting) – Standard of review is an arcane appellate concept that is of importance to few and of interest to fewer. Nevertheless, in this case, it makes all the difference.

The key decision on review is the trial judge's posttrial ruling that a midtrial judicial determination constituted an abuse of discretion. The majority opinion treats the posttrial ruling as itself being a discretionary one and, on appeal, applies an abuse of discretion standard in reviewing that ruling. I disagree. I believe that the posttrial ruling was a ruling on a legal question, subject to no deference on appeal. This conviction leads me to reach a different result on the merits of the controversy.

The defendant's motion for a new trial was granted pursuant to the applicable court rule, which authorizes such relief "for any one of the following causes materially affecting the substantial rights of such parties: (1) . . . abuse of discretion . . . ." CR 59(a). In my view, the determination of whether a trial court's pretrial or midtrial ruling constituted an abuse of discretion is a legal question, not a discretionary ruling. Legal questions are reviewed *de novo*, even when they arise in the context of a new trial ruling. Detrick v. Garretson Packing Co., 73 Wn.2d 804, 812, 440 P.2d 834 (1968). Appellate courts review trial court rulings for abuse of discretion "only when the grounds on which the trial court grants a new trial are based on an exercise of discretion." Detrick, 73 Wn.2d at 812. When an order granting or denying a new trial is "predicated upon rulings as to the law . . . no element of discretion is involved." Johnson v. Howard, 45 Wn.2d 433, 436, 275 P.2d 736 (1954).

A posttrial ruling as to whether a trial court abused its discretion by excluding evidence presents a legal question, not a discretionary one. It is, therefore, entitled to no deference on further posttrial review.

On direct appeal from a judgment entered on a jury's verdict, it is common for the Court of Appeals to be asked to review a trial judge's pretrial or midtrial ruling admitting or excluding evidence. We do so by applying an abuse of discretion standard to the trial judge's decision.[1] In so doing, we are not, ourselves, exercising discretion. Instead, we are answering a legal question.

On occasion, unhappy litigants are reluctant to accept the appellate court's answer to such a question. These litigants may seek review by the Supreme Court. From time to time, the Supreme Court agrees to review such a case.

When it does so, the Supreme Court affords no deference to the appellate court's ruling. It does not apply an "abuse of discretion" standard to the appellate determination. Instead, the Supreme Court views the matter as presenting a legal question and ignores the appellate ruling, instead applying an abuse of discretion standard directly to the trial court ruling at issue.[2]

In the present case, we should analyze the trial court's ruling on the legal question (did either the pretrial ruling or the midtrial ruling constitute an abuse of discretion?) in the same way as would the Supreme Court if the question had worked its way up to that court on direct review (in the absence of a new trial motion). We should

---

[1] See, e.g., Colley v. Peacehealth, 177 Wn. App. 717, 312 P.3d 989 (2013) (pretrial evidentiary ruling); Jordan v. Berkey, 26 Wn. App. 242, 611 P.2d 1382 (1980) (midtrial ruling altering pretrial exclusion of evidence).

[2] See, e.g., In re Det. of Post, 170 Wn.2d 302, 241 P.3d 1234 (2010); State v. Magers, 164 Wn.2d 174, 189 P.3d 126 (2008); State v. Powell, 126 Wn.2d 244, 893 P.2d 615 (1995).

afford no deference to the posttrial ruling on the question and instead focus our review directly on the pretrial and midtrial judicial rulings themselves.

Were we to do this, I believe, the result of this appeal would be entirely different.

First, to analyze the pretrial ruling. Hollins' complaint alleged that defendant's breach of her duty of care was the sole proximate cause of "Hollins' injuries and damages as alleged." As trial approached, Hollins moved to exclude any evidence of all other conditions, including the prior neck injury. Defendant's opposition memorandum devoted three paragraphs to this issue. Two of these paragraphs addressed the prior neck injury (which is not at issue on appeal). The other paragraph conceded that all other evidence could be excluded.[3]

The judge "exclude[d] any and all evidence, references to evidence, testimony, or argument relating to a left knee injury, . . . all surgery thereto, . . . pre-existing degenerative disc disease, injury to his neck in 2009, an injury to left elbow, . . . and subsequent surgery, . . . low back injury, . . . right hip injury, . . . injury to right wrist." In other words, it was all excluded. And the exclusion was not limited to any purpose. The order does not reference "opening the door." Defense counsel never argued that defendant should be allowed to reference these matters, admit evidence, or argue about them regarding proof of damages. The exclusion was total.

If there had been no new trial motion and we were called upon to review this ruling on direct appeal, would we affirm it? We would.

---

[3] None of the 40 pages of authority cited to us on appeal was submitted to the pretrial motion judge.

3

The motion was properly brought. The defendant had a full and fair opportunity to litigate the motion. The defendant made the argument her counsel chose to make, thereby forfeiting all others. And the judge ruled based on what was then before the court. It was a sound ruling. It was not an abuse of discretion. We would affirm it.

Now to the midtrial ruling.[4] In the face of a justifiable—affirmable—pretrial ruling, the trial judge was asked to undo the pretrial ruling, thereby admitting evidence that had been excluded and allowing argument that had been precluded. This would have greatly altered the issues in the ongoing trial and have been greatly disruptive in general. The trial judge said no. If there had been no new trial motion and we were called upon to review this ruling on direct appeal, would we affirm it? We would.

The pretrial ruling was proper. Plaintiff then presented his case in accordance with that ruling. The defendant did not claim that the plaintiff's testimony was a surprise or that it was at variance with answers given in pretrial discovery. Instead, the defendant simply wanted a "do-over"—the opportunity to argue that which it had *chosen not to argue* to the pretrial motion judge.

Would no reasonable judge deny the defendant's request? Was denial of the defendant's request outside the range of acceptable choices available to the judge? Was denial of such a dramatic request, in the middle of an ongoing trial, a decision made with no tenable basis? These are the abuse of discretion formulations applicable to the midtrial decision.

---

[4] I acknowledge that the defendant's request arose several times. For ease of understanding, I will refer to the ruling as a singular one.

Of course, *some* reasonable judges would have denied the request (even if others might have granted it). Of course, denying the request was within the range of acceptable choices. Of course, the timing of the request, the defendant's advancement of previously forfeited arguments, and the disruption caused to the trial process—coupled with the propriety of the original, pretrial ruling—all combined to provide a tenable basis for denial.

On direct appeal, we would affirm both the pretrial and midtrial rulings.

The fact that a posttrial motion was made should neither distort our inquiry nor change the result. The rulings made were affirmable. Therefore, the judge erred by concluding otherwise in the posttrial ruling. We should reverse that decision. Judgment should be entered on the jury's verdict.

Because the majority determines otherwise, I respectfully dissent.